This appeal, which involves an accident that happened a few feet from the intersection of Tchoupitoulas and Jena Streets in the City of New Orleans, in the early morning of June 14, 1946, presents only a question of fact.
Tchoupitoulas Street is a paved two-way street and runs in an uptown-downtown direction; Jena meets Tchoupitoulas at a right angle, but does not cross it for the reason that buildings of the Lane Cotton Mill occupy what would be the continuation of Jena Street on the river side of Tchoupitoulas.
Plaintiff, a pedestrian, attempted to cross from the woods side to the river side of Tchoupitoulas Street, and was run into by a taxicab travelling towards downtown on Tchoupitoulas Street in its proper traffic lane. She sues Samuel Burns, Jr., owner of the taxicab; the driver, Herman J. Smith; and the liability insurer, Shepherd Cab Owners Association, all jointly and in solido, for a large sum for her personal injuries, loss of earnings, and medical expenses. Plaintiff charges that the accident resulted solely from the fault of the driver of the taxicab, in driving it at an excessive rate of speed and in failing to have it under control. Defendants admitted the accident, but they deny that it was caused through the fault of the driver. In the alternative, defendants pleaded that plaintiff was contributorily negligent. After hearing the case on its merits, the lower court dismissed plaintiff's suit, and she has prosecuted this appeal from the judgment.
Plaintiff and her sister, a Mrs. Phillipello, worked at the Lane Cotton Mill. At about 6:55 a.m. on the date of the accident, they entered a store on the uptown-woods corner of Jena and Tchoupitoulas Streets for the purpose of buying their lunches for the day. The order of Mrs. Phillipello was filled first, and she left the store and crossed Tchoupitoulas Street. When plaintiff's order was filled, she made her exit from the store at some distance behind her sister. Two large trucks were parked in front of the store; one, it seems, completely blocked the lane which a pedestrian would normally use in crossing Tchoupitoulas Street. The other truck was about two or three feet in front of the one above mentioned.
Thus, finding the usual pedestrian passageway blocked, plaintiff says she walked between the two trucks, looked in both directions, and saw no traffic except an automobile at about Cadiz Street, one block away towards uptown, but she was unable to determine whether it was in motion. She then proceeded onward and had nearly crossed Tchoupitoulas Street, when she was run into. After having observed the automobile at Cadiz Street, plaintiff paid no further attention to it until it was upon her.
It is not disputed that the right front fender of the taxicab struck plaintiff, and that she was thrown sideways partly beneath an automobile which was parked on the river side of Tchoupitoulas Street. The cab travelled only a short distance after the accident. The point of impact was about ten feet above Jena Street, as is attested to by the location of broken *Page 857 
glass from the right headlight of the cab, which was shattered, and also by the point at which plaintiff was lying.
Plaintiff's sister did not see the accident, and the only material part of her testimony is reposed in her statement that plaintiff was lying about ten feet above Jena Street partly under the parked automobile.
Mrs. Bongard, also an employee of the cotton mill, who was on the river-side sidewalk of Tchoupitoulas Street, testified on direct examination that she noticed Miss Montelbano walking in the middle of the street and that the cab was approaching at a "good rate of speed" fifty or sixty feet away, but she paid no further attention to it and did not see the accident.
However, at another point in her direct examination, this witness testified:
"Q. When you saw Miss Montelbano in the middle of the street, where was this taxicab? A. Well, it was between Cadiz and the middle of the block from Jena."
John Lopez, the brake inspector for the Police Department, made an examination of the taxicab after the accident, and found that the brakes were "fair." The steering apparatus of the cab, however, was in poor condition, and an almost complete turn of the steering wheel could be made without causing the wheels to respond. He deemed the taxicab unsafe, and ordered that it be towed to a repair shop.
It will thus be seen that the only plaintiff eyewitness to the accident was Miss Montelbano herself, and she knows nothing except that she was struck when nearly across the street.
Herman J. Smith, the driver, and his brother, who was riding in the taxicab, gave their versions. The cab had discharged a passenger at Cadiz Street and was then driven down Tchoupitoulas Street. Cars belonging to workers at the mill were parked on both sides of the street, but a narrow, though sufficient roadway remained to accommodate vehicles travelling in both directions on Tchoupitoulas Street.
The cab driver made some statements which are conflicting. He first said that plaintiff came out of the side exit of the store, emerged from between the parked trucks, and then ran directly into his path. Upon being questioned by the court, he denied that he saw plaintiff leave the store, and insisted that he did not see her until she was right in front of the cab. Later he stated that plaintiff was three feet from the trucks when he first saw her from a distance of ten feet. According to the witness, he immediately applied his brakes, but could not avert hitting her, and the cab travelled only a short distance after the accident.
The driver was confronted with a statement which he made to the investigating police officers about two hours after the accident, in which he stated that the cab was about "a quarter of the block before hitting Jena Street," when he saw plaintiff run out from between the trucks.
Hugh Smith, who was riding in the cab, testified that plaintiff, who was running, darted out from between the trucks, as though she was trying to catch up with some one. This witness, at another point in his testimony, stated that he first saw plaintiff when she was directly in front of the cab, running across the street at an angle towards Cadiz Street. He explained his first statement by saying he judged that she had passed between the parked trucks, because after the accident he noticed their positions at the corner.
Counsel for plaintiff argue that in view of the contradictions the testimony of the Smiths is unworthy of belief, and that the written statement of Herman J. Smith given to the police officers shortly after the accident impeaches all of his testimony, and is entitled to greater credence. Counsel say that the written statement proves conclusively that the cab was a quarter of a block away when Miss Montelbano came into Tchoupitoulas Street.
Plaintiff also points out that Mrs. Bongard testified that when Miss Montelbano reached the middle of Tchoupitoulas Street the cab was fifty or sixty feet away. Mrs. Bongard's testimony, however, does not impress us. If plaintiff had been in the *Page 858 
middle of the street when the cab was fifty or sixty feet away, it seems to us that she could have crossed the street without incident. The record does not show that the taxicab was exceeding the speed limit; Mrs. Bongard said it was going at a "good rate," while the only other witness who testified as to its speed, Hugh Smith, said it was travelling at about fifteen or twenty miles an hour. Then, too, there is an inconsistency in Mrs. Bongard's statements; she also said the cab was about one-half of a block from Jena Street when Miss Montelbano was in the middle of Tchoupitoulas Street.
Regardless of the apparent conflict in the testimony of the cab driver and his brother as to some details, they seem to have given the more correct version as to what happened, and we gather, after an analysis of the entire record, that Miss Montelbano entered Tchoupitoulas Street, without paying heed to oncoming traffic, directly into the path of the cab. It is inconceivable that the cab was at Cadiz Street, one block away, when she entered the street. Both Smiths insist that plaintiff ran from between the trucks, and Hugh Smith stated that it appeared as if she was trying to catch up with some one. We cannot overlook the fact that Miss Montelbano and her sister left their home together on the morning of the accident and entered the store together to buy their lunches for the day. The sister, Mrs. Phillipello, left the store first and was ahead of Miss Montelbano, and it is not unlikely that Miss Montelbano did walk fast, or was running as the Smiths said, in an effort to catch up with Mrs. Phillipello. The entrance to the mill is at Cadiz and Tchoupitoulas Streets. The record shows also that employees of the cotton mill are scheduled to be at their posts by 7 a.m. The two sisters entered the store at 6:55 a.m., which allowed them but five minutes to make their purchases and get into the mill. Miss Montelbano worked on a loom on the second floor at the Jena Street end of the building. She had but little time to reach her post before 7 a.m., and this circumstance, too, leads us to the belief that she did not walk into the street at a normal gait, but rather was making haste so as not to report late at her job.
We are cognizant of the testimony of the brake inspector that the taxicab was in poor condition. He testified, however, that its brakes were "fair," and made no complaint about this part of the mechanism. The defective steering wheel had nothing whatever to do with the accident. Smith applied the brakes immediately upon seeing plaintiff, and the evidence abundantly shows that the taxicab was brought to a stop within a very short distance. We find ourselves unable to convict the taxicab driver of negligence.
Counsel strenuously argue that the driver of the cab had the last clear chance of avoiding the accident. They contend that he could not properly maneuver the cab because of the defective steering apparatus. Our study of the evidence does not show that Smith could have done more than to apply his brakes. When Miss Montelbano emerged from between the parked trucks, we believe, the taxicab was immediately upon her, and the driver had insufficient time and space within which to avoid running into her. The doctrine of the last clear chance is inapplicable to this case.
As we said at the outset, only a question of fact is involved in this case, which was resolved by the judge a quo adversely to plaintiff's contentions. Finding no manifest error in the judgment, we should not disturb it.
The judgment appealed from is affirmed.
Affirmed. *Page 891